IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JIMMY LEE SHINE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-2840 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Doc. 14) and Defendant's Cross-Motion for Summary Judgment (Doc. 11). The court has considered the motions, the responses, the administrative record, and the applicable law. For the reasons set forth below, the court **DENIES** Plaintiff's motion and **GRANTS** Defendant's motion.

## I. Case Background

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) for judicial review of an unfavorable decision by the Social Security Administration ("SSA") Commissioner ("Commissioner" or "Defendant") regarding Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").

### A. Medical History

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Doc. 10, Ord. Dated Dec. 4, 2017.

Plaintiff was born on November 7, 1953, and was fifty-seven years old on the alleged disability onset date of September 15, 2011.[2]  Plaintiff had a high school education and had worked as a maintenance engineer for twenty-eight years at the time he quit working in 2011.[3]

On January 6, 2015, Plaintiff underwent a consultative medical examination with Hanna J. Abu-Nassar, M.D., ("Dr. Abu-Nassar") in conjunction with his application for disability benefits.[4]  Plaintiff's chief complaints were a bulging disk in his lower back, bone spurs, and arthritis.[5]  Plaintiff relayed his history of back pain, which originated in April 1998 while moving a refrigerator.[6]  Plaintiff noted that he had been diagnosed with a bulging disk in his lower back and bone spurs, but that he had not undergone surgery or received injections.[7]  Plaintiff still experienced "recurrent back pain."[8]  Plaintiff also felt pain in his left leg and knee and treated his pain with a heating pad and over-the-counter medications such as Advil and Aleve.[9]  It was also noted

[2]     See Tr. of the Admin. Proceedings ("Tr.") 162.

[3]     See Tr. 29-30.

[4]     See Tr. 252-59.

[5]     See Tr. 252.

[6]     See id.

[7]     See id.

[8]     Id.

[9]     See Tr. 252-53.

that Plaintiff's left knee was subject to "intermittent swelling, a warm sensation and stiffness as well as numbness."[10]  Plaintiff also reported neck pain.[11]  In terms of prior medical treatment, Plaintiff had not seen his chiropractor since 2011 and had not had an appointment with his primary care physician in eight years.[12]

Dr. Abu-Nassar conducted a physical examination of Plaintiff.[13] Plaintiff's spine showed a "normal curvature" but Dr. Abu-Nassar noted that he had "tenderness over the lower lumbar region in the midline and over the right buttock."[14]  Plaintiff's knee was not tender or swollen, his gait was normal, the straight leg raising test was normal, deep tendon reflexes were normal, and Plaintiff had the ability to walk on his toes, heels, and in tandem.[15] Plaintiff had no swelling or limitation in his motion in his extremities.[16]  Plaintiff could lift forty pounds and ten pounds overhead, walk four blocks at once, stand for forty minutes, sit for thirty minutes, bend, squat, and climb half a flight of stairs.[17]   Plaintiff's  daily  activities  included  watching

---

[10]    Tr. 253.

[11]    See id.

[12]    See id.

[13]    See Tr. 252-59.

[14]    Tr. 254.

[15]    See id.

[16]    See id.

[17]    See Tr. 253.

television, "light" housework, including cooking, and walking for exercise.[18]  Plaintiff did not use assistive devices, and had the abilities to "write, hold a coffee-cup, open a jar top, hold a light skillet and a broom."[19]

This examination also included two x-rays.[20]  The x-ray of Plaintiff's left knee was "unremarkable," showing "[n]o fracture, dislocation, bone or joint space abnormality" and "[n]o soft tissue calcification."[21]  Plaintiff's spine x-ray revealed "[n]o fracture or dislocation" but showed "[d]egenerative changes, bony spondylosis, and disk space narrowing" at L5-S1.[22]  The x-ray also showed "[s]ome degenerative changes/spondylosis" in the lower dorsal spine.[23]  Plaintiff's SI joints were found to be "unremarkable."[24]  Dr. Abu-Nassar concluded that there were "[m]arked degenerative changes and disk space narrowing at L5-S1."[25]

Overall, Dr. Abu-Nassar concluded that Plaintiff had a "[s]uspect herniated disk at L4-L5, possibly at L5-S1 with lumbar radiculopathy, possibly on the left.  Possible left knee

---

[18]    See id.

[19]    Id.

[20]    See Tr. 257-59.

[21]    Tr. 257.

[22]    Id.

[23]    Id.

[24]    Id.

[25]    Id.

degenerative joint disease as well as possible cervical spine degenerative disease."[26]

## B.  <u>Application to SSA</u>

Plaintiff applied for disability insurance benefits on August 29, 2014.[27]  In a disability report from the same date, Plaintiff claimed his ability to work was limited by the following conditions: bulging disc in the lower back, bone spurs in his back, and arthritis.[28]

Plaintiff completed a function report on November 30, 2014.[29] Plaintiff reported that he injured his back while working in 1998, and this injury made it difficult to move out of bed, sit for long periods of time, and lift objects over forty pounds.[30]  This injury also caused numbness in his legs.[31]  Plaintiff did not engage in many daily activities other than occasionally walking outside; he spent most of his time lying around.[32]  Plaintiff's condition affected his ability to sleep, and he sometimes needed help with dressing himself, moving in and out of the bathtub, and using the

---

[26]    Tr. 255.

[27]    <u>See</u> Tr. 162-71.

[28]    <u>See</u> Tr. 198.

[29]    <u>See</u> Tr. 205-12.

[30]    <u>See</u> Tr. 205.

[31]    <u>See</u> <u>id.</u>

[32]    <u>See</u> Tr. 206.

toilet.[33]

Plaintiff did not complete household chores or yard work due to numbness in his legs and back pain.[34] While Plaintiff could drive a car, he did not leave the house by himself.[35] Plaintiff could manage money but he reported that this ability was impacted by his conditions.[36] Plaintiff listed his hobbies and interests as watching television and reading, which he engaged in on a daily basis.[37] Plaintiff did not socialize often, but visited family members on occasion.[38] Plaintiff reported that he could no longer engage in outdoor activities after the onset of his back pain.[39]

Plaintiff's condition affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, and use his hands.[40] These physical activities caused problems for Plaintiff such as "sharp" pain in his back and legs, numbness, and spasms.[41] Plaintiff estimated that he could walk for about one hundred yards before he would require rest for ten to fifteen

---

[33]    See id.

[34]    See Tr. 207-08.

[35]    See Tr. 208.

[36]    See Tr. 208-09.

[37]    See Tr. 209.

[38]    See id.

[39]    See Tr. 210.

[40]    See id.

[41]    See id.

minutes.[42]   Plaintiff reported that he could pay attention for thirty minutes, follow written instructions thirty percent of the time, and follow spoken instructions.[43]   Plaintiff adapted well to stress and changes in routine.[44]   After he received his injury, Plaintiff sometimes utilized a cane to assist in ambulating.[45]   In terms of medication, Plaintiff listed that he took the following without side effects: extra-strength Tylenol, Aleve, Lyrica, and Propoxy-N/apap.[46]   At the end of his function report, Plaintiff explained that while he was employed, he would rarely work a full week and utilized FMLA leave.[47]   Because of the difficulty performing his position, he "was force to take a[n] early retirement."[48]   Plaintiff explained that he could only afford over-the-counter medication to treat his conditions.[49]

On January 23, 2015, the SSA found Plaintiff not disabled at the initial level of review.[50]   Robert Herman, M.D., ("Dr. Herman")

---

[42]   See id.

[43]   See id.

[44]   See Tr. 211.

[45]   See id.

[46]   See Tr. 212.

[47]   See id.

[48]   Id.

[49]   See id.

[50]   See Tr. 46-54.

opined that Plaintiff had a severe back impairment.[51] Plaintiff's exertional limitations were assessed as follows: occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk six hours in an eight-hour work day, sit about six hours in an eight-hour work day.[52] Plaintiff had the following postural limitations: occasional climbing of ladders, ropes, or scaffolds and occasional stooping; he could frequently balance, climb ramps or stairs, crouch, kneel, or crawl.[53] Because of his residual functional capacity ("RFC"), Plaintiff could not perform his past relevant work.[54] Because he was able to perform light, skilled work, Dr. Herman believed that Plaintiff could perform the jobs of electrical technician, testing technician, or tester electrical continuity.[55]

In an updated disability report from February 12, 2015, Plaintiff stated that his conditions had "become more severe" causing him "greater limitations" that were "more severe in virtually every aspect of [his] daily life."[56] On February 27, 2015, the SSA again found Plaintiff not disabled upon

---

[51]    See Tr. 50-52.

[52]    See Tr. 51.

[53]    See Tr. 51-52.

[54]    See Tr. 53.

[55]    See Tr. 53-54.

[56]    Tr. 223.

reconsideration, making similar findings as in the initial determination.[57]  After this denial, Plaintiff completed another disability report on April 8, 2015, again reporting a worsening of his condition.[58]  Plaintiff requested a hearing before an ALJ.[59]  The ALJ granted Plaintiff's request and scheduled the hearing on June 22, 2016.[60]

## C. **Hearing**

At the hearing, Plaintiff and a vocational expert, Cheryl Swisher ("Swisher" or "VE"), testified.[61]  Plaintiff was represented by an attorney.[62]

Plaintiff testified that he was sixty-two years old, had a high school education, and was unmarried.[63]  At the time of the hearing, he was living with the mother of his children and his twenty-one-year-old son.[64]

Plaintiff worked at as a maintenance engineer for about

---

[57]    See Tr. 55-64.

[58]    See Tr. 231.

[59]    See Tr. 75-76.

[60]    See Tr. 94-98.

[61]    See Tr. 26-45.

[62]    See id.

[63]    See Tr. 29.  Elsewhere (for example, in the function report), Plaintiff reported being married.  See, e.g., Tr. 206.

[64]    See Tr. 29-30.

twenty-eight years.[65] Plaintiff explained that the job was physically demanding, as he had to constantly stand, walk, and lift heavy objects of up to one hundred-fifty pounds.[66] While Plaintiff was working, he supervised twenty-five people, as he was the chief shop lead man of the engineering department at Ben Taub Hospital.[67] This department was responsible for maintenance and repair of the entire hospital.[68] Plaintiff did not have hiring or firing power, but he tracked the work his employees were to complete and also created reports for his supervisors.[69] Plaintiff was certified as a welder, a refrigeration technician, and as a power II operator.[70] Plaintiff knew how to perform electrical work and helped repair air conditioning units and generators.[71]

Plaintiff was covered under the Family Medical Leave Act ("FMLA") from 1989 to 2011, when he stopped working.[72] Plaintiff explained that because he was covered under the FMLA, he could take leave for up to one hundred and twenty-two days annually.[73]

---

[65]    See Tr. 30.

[66]    See id.

[67]    Tr. 37.

[68]    See id.

[69]    See Tr. 37-38.

[70]    See Tr. 38.

[71]    See Tr. 38-39.

[72]    See Tr. 31.

[73]    See id.

10

Plaintiff sometimes had difficulty going to work and reported that he experienced "sharp, shooting pains in my legs, my lower extremities."[74] Plaintiff utilized a transcutaneous electrical nerve stimulation ("TENS") unit and a shock therapy machine for his pain.[75] Plaintiff missed about eight to ten days of work every month while employed.[76]

Plaintiff sought medical treatment prior to his retirement in 2011, stating that he was treated for "[b]ulging discs . . . herniated disc, bone spurs."[77] Plaintiff took prescription medication for back pain and surgery was considered, but never scheduled.[78] Plaintiff stopped seeing his doctor once he retired because he no longer had to perform physically-demanding tasks such as lifting objects weighing over forty pounds or requiring continuous movement.[79] Plaintiff said that he switched to over-the-counter pain medication, which he took three times a week, and he rested more since he was no longer working.[80] He also used his TENS unit once a month for his pain and occasionally walked with a

---

[74] Id.

[75] See Tr. 31-32.

[76] See Tr. 32.

[77] Id.

[78] See Tr. 32-33.

[79] See Tr. 33.

[80] See Tr. 33, 37.

cane.[81] Plaintiff explained that he sometimes had difficulty seeing far away objects or reading, but wearing glasses helped him.[82]

The ALJ asked Plaintiff about his current physical abilities.[83] Plaintiff opined that he could stand for about forty-five minutes to an hour before needing to sit.[84] Plaintiff could not sit for longer than twenty to thirty minutes before standing up and stretching.[85] Plaintiff had difficulty undertaking household chores or yard work because it caused him back pain, but he would sometimes sweep or mop the house.[86] Plaintiff did not wash dishes, do laundry, take out the garbage, vacuum, make the bed, change the sheets, grocery shop, use the computer, or attend religious services.[87] Plaintiff was not always able to get himself in and out of the bathtub.[88] Plaintiff was able to drive and belonged to the neighborhood watch group.[89] Plaintiff smoked approximately a pack of cigarettes per month.[90]

---

[81]    See Tr. 35, 37.

[82]    See Tr. 43-44.

[83]    See Tr. 33-34.

[84]    See Tr. 33-34.

[85]    See Tr. 34.

[86]    See Tr. 34-35.

[87]    See Tr. 35-36.

[88]    See Tr. 35.

[89]    See Tr. 36.

[90]    See Tr. 36-37.

Towards the end of the hearing, the VE discussed Plaintiff's past work history.[91] The VE stated that Plaintiff's past relevant work met the definition of a building maintenance repairer under the Dictionary of Occupational Titles ("DOT") and was considered a medium, skilled position.[92] The VE opined that Plaintiff had no transferable skills from this past work to a light position due to his age.[93]

## D. __Commissioner's Decision__

On September 21, 2016, the ALJ issued an unfavorable decision.[94] The ALJ found that Plaintiff last met the requirements of insured status on December 31, 2015, and that Plaintiff did not engage in substantial gainful activity from the onset date of September 15, 2011, through the date last insured.[95] The ALJ found that Plaintiff had one medically determinable impairment: "[d]isorders of the back."[96] The ALJ also acknowledged Plaintiff's allegation that he had knee problems, but found that it was not a medically determinable impairment, as the evidence demonstrated a

---

[91]    See Tr. 39-45.

[92]    See Tr. 40-41.

[93]    See Tr. 42.

[94]    See Tr. 15-20.

[95]    See Tr. 17.

[96]    Id.

normal x-ray and normal ranges of motion.[97]  The ALJ found that Plaintiff had no severe impairments, reasoning that he had no impairment or combination of impairments that would limit his ability to perform basic work-related activities for twelve months.[98]

The ALJ discussed Plaintiff's claimed symptoms and his medical treatment and stated that he followed the regulatory requirements as to both.[99]  When considering Plaintiff's symptoms, the ALJ first evaluated whether a medically determinable impairment could reasonably be expected to produce the alleged symptoms.[100]  Second, he evaluated the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning," looking to other evidence in the record for those symptoms that were not substantiated by objective medical evidence.[101]

The ALJ discussed Plaintiff's 2015 clinical examination, including x-rays of his spine and left knee.[102]  The only opinion evidence in the record were those of the state agency physicians

---

[97]    See id.

[98]    See Tr. 18.

[99]    See Tr. 18-19.

[100]   See Tr. 18.

[101]   Id.

[102]   See Tr. 19.

who opined that Plaintiff's back disorder was severe.[103]  The ALJ gave these opinions little weight as the only evidence in support was the "highly benign clinical exam," explaining that there were "no significant abnormalities."[104]  Id.  The ALJ concluded:

> After considering the evidence of record, the Administrative Law Judge finds that the claimant's medically determinable impairment could have reasonably been expected to produce the alleged symptoms.  However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.[105]

Therefore, the ALJ found that Plaintiff was not disabled from the alleged onset date through the date last insured.[106]  Plaintiff appealed the ALJ's decision, and, on July 27, 2017, the Appeals Council denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner.[107]  After receiving the Appeals Council's denial, Plaintiff sought judicial review of the decision by the court.[108]

## II.  Standard of Review and Applicable Law

The court's review of a final decision by the Commissioner

---

[103]    See id.

[104]    Id.

[105]    Tr. 19.

[106]    See Tr. 20.

[107]    See Tr. 1-6.

[108]    See Doc. 1, Pl.'s Compl.

denying disability benefits is limited to the determination of whether: 1) the ALJ applied proper legal standards in evaluating the record; and 2) substantial evidence in the record supports the decision. <u>Waters v. Barnhart</u>, 276 F.3d 716, 718 (5th Cir. 2002).

## A. <u>Legal Standard</u>

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act. <u>Wren v. Sullivan</u>, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a); <u>see also</u> <u>Greenspan v. Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A); <u>Jones v. Heckler</u>, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following sequential five-step process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe

impairment;" (3) a claimant whose impairment meets or is equivalent to [a Listing] will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and [RFC] must be considered to determine whether he can do other work.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520.  The analysis stops at any point in the process upon a finding that the claimant is disabled or not disabled. Greenspan, 38 F.3d at 236.

## B.  **Substantial Evidence**

The widely accepted definition of "substantial evidence" is "that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).  It is "something more than a scintilla but less than a preponderance." Id.  The Commissioner has the responsibility of deciding any conflict in the evidence. Id.  If the findings of fact contained in the Commissioner's decision are supported by substantial record evidence, they are conclusive, and this court must affirm.  42 U.S.C. § 405(g).

Only if no credible evidentiary choices of medical findings exist to support the Commissioner's decision should the court overturn it.  See Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  In applying this standard, the court is to review the entire record, but the court may not reweigh the evidence, decide

the issues de novo, or substitute the court's judgment for the Commissioner's judgment.  Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).  In other words, the court is to defer to the decision of the Commissioner as much as is possible without making its review meaningless.  Id.

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  Plaintiff asserts that the ALJ erred by finding that his back impairment was not severe and that he should have been found to be disabled.  Defendant argues that the ALJ's decision is legally sound and is supported by substantial evidence.

At step two, the ALJ considers whether the claimant has a medically determinable impairment or combination of impairments that are severe.  20 C.F.R. § 404.1520(c).  Severity is determined by whether the impairment or combination of impairments significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1521; Social Security Ruling ("SSR") 85-28, 1985 WL 56856 (S.S.A. 1985); SSR 96-3p, 1996 WL 374181 (S.S.A. July 2, 1996); SSR 96-4p, 1996 WL 374187 (S.S.A. July 2, 1996).

In Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), the court held that an impairment is considered non-severe only if it does not cause more than a minimal limitation in the claimant's ability to perform basic work activities or activities of daily

living.  The court stated, "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."   Id. (internal quotations and citations omitted).

In his opinion, the ALJ explained:

> In terms of the claimant's disorder of the back, the record does not support a finding that the claimant's back impairment is severe, as it would not interfere with the claimant's ability to function in a work setting.  In this connection, Exhibit 1F reflects a normal physical examination.  The Administrative Law Judge observes that Exhibit 1F reflects that the claimant can bend and squat and uses no assistive devices.  The exhibit further reveals that the claimant has a normal spinal curvature and no paravertebral spasms or trigger paints [sic].  Not only does he have a normal gait and tandem walk, but he can also walk on his toes.  In addition, Exhibit 1F reveals that he has normal ranges of motion, including of the neck and back, and normal motor muscle power, normal sensory functioning, and normal reflexes.  Further, Exhibit 1F documents that the claimant has a normal ability to fine finger, a normal grip [, and] negative straight leg raising.  These are not the clinical findings that one would expect to find in the medical records of a person disabled by a back impairment.[109]

Overall, the ALJ found that Plaintiff's one medical examination was normal.  The court finds that substantial evidence supports the ALJ's determination that Plaintiff's back impairment was not severe.  The normal findings from this examination, along with his testimony that he took over-the-counter medication for his pain

---

[109]     Tr. 19.

three times a week is substantial evidence that his back impairment was not severe.

Plaintiff challenges the ALJ's rejection of the state agency consultant opinions that his back impairment was severe. However, as he explained in his decision, Plaintiff's examination by Dr. Abu-Nassar resulted in normal findings. In his motion, Plaintiff focuses on the fact that Dr. Abu-Nassar concluded that the x-ray showed "marked degeneration." The ALJ rejected this finding because of the "normal" clinical examination and the fact that the x-ray report showed only "some" degeneration in Plaintiff's spine. The ALJ noted this inconsistency in support of his finding to give the state agency opinions little weight. The court finds that the ALJ's decision to give the state agency reviewing opinions little weight is supported by substantial evidence from the examination conducted by Dr. Abu-Nassar.

The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. <u>Ripley v. Chater</u>, 67 F.3d, 552, 557 (5th Cir. 1995). Reversal of the Commissioner's decision is appropriate only if Plaintiff can show that she was prejudiced in some way. <u>Id.</u> Prejudice can be established by showing that, had the ALJ adequately performed his duty, he "could and would have adduced evidence that might have altered the result." <u>Jones v. Astrue</u>, 691 F.3d 730, 735 n.8 (5th Cir. 2012). In other words, Plaintiff must show that absent the

error, the ALJ might have reached a different conclusion.  Ripley,
67 F.3d at 557 n.22.

Here, even if the ALJ found that Plaintiff had a severe back
impairment at step two, substantial evidence supports a finding
that Plaintiff is not disabled.  The medical examination with Dr.
Abu-Nassar revealed normal findings other than tenderness in
Plaintiff's back.  Plaintiff has not sought medical treatment for
his impairments since he stopped working and only takes over-the-
counter medication for his back pain.  The state agency reviewing
opinions, which found that his back impairment was severe,
proceeded with the full analysis and, relying on vocational expert
opinions, found that he could perform other jobs in the national or
regional economy at the light level of exertion.   Therefore,
substantial evidence supports the ALJ's decision, and even if
Plaintiff's back impairment was severe, failure to make such a
finding was harmless error.

### IV. Conclusion

Based on the foregoing, the court **DENIES** Plaintiff's motion
and **GRANTS** Defendant's.

**SIGNED** in Houston, Texas, this 10th  day of August, 2018.

_____
U.S. MAGISTRATE JUDGE